IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUSTIN ERSKINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1017 (MN) |
| ) | |
| C/O CLAIRE DEMATTEIS, et al., ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION</u>**

Justin Erskine, Georgetown, DE – Pro Se Plaintiff

October 19, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Justin Erskine ("Plaintiff"), an inmate at Sussex Correctional Institution ("SCI"), filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 3). This Court proceeds to screen the Complaint (D.I. 1) pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

**I.      BACKGROUND**

Plaintiff filed a complaint with three distinct claims. (D.I. 1). This Court severed the claims into three separate cases so that the litigation could proceed in a logical fashion. (*See* D.I. 4). The instant Complaint consists of pages 18 through 24. (D.I. 1). Plaintiff complains of actions by Delaware Department of Correction Commissioner Claire DeMatteis ("DeMatteis"), Cpl. Kara Stanley ("Stanley"), S. Lt. Matthew Long ("Long"), and Sgt. Kinsler "(Kinsler") that took place at SCI between October 11, 2020 and December 11, 2020. (*Id*. at 18-23).

In early October of 2020, Heather Morris ("Morris"), a friend of Plaintiff who staged protests against prison conditions and treatment of inmates and an individual with whom Plaintiff had a sexually explicit video visit, scheduled two visits to see Plaintiff. (*Id.* at 18). When Morris arrived for an October 11, 2020 visit, she learned that she was banned at SCI until October 28, 2020, and she scheduled for a visit after that date. (*Id.*). On October 24, 202, Morris attended a protest with DeMatteis' sister-in-law and on that day Plaintiff was called to S. Lt. Hanna's office and advised that there had been a "mistake" and that Morris was banned from entering the prison and having video visitation/tablet communication for "3 years, not 3 months." (*Id.*). Plaintiff alleges the "error" is very unlikely and "highly suspicious" because DeMatteis detests her sister-in-law and the sister-in-law and Morris had spent the day with the sister-in-law protesting. (*Id*. at 18-19).

Due to the COVID pandemic, the building where Plaintiff was housed was restricted to three telephone calls per day when before there had been no limit. (*Id.* at 19). On October 28, 2020, Plaintiff and Morris had a telephone discussion regarding avenues of recourse such as citizen-led protests or litigation. (*Id.*). The next day, a team of officers came to Plaintiff's cell, detained him, and informed him they were instructed to shake Plaintiff down. (*Id.*). Plaintiff was strip searched, almost all of his personal photographs were confiscated, and he was written for a number of minor "contraband" items. (*Id.*). Plaintiff alleges that nearly all of the items that were considered contraband "had just been inventoried and given to him upon his return from the COVID unit." (*Id.*). Plaintiff told Morris about the search and she telephoned the prison to find out why Plaintiff was being targeted and harassed. (*Id.*). Morris was advised that the Bureau Chief, Warden, Deputy Warden, and Security Superintendent were in a meeting discussing the matter. (*Id.* at 20).

Stanley wrote-up Plaintiff for Class 2 offenses but the infractions were upgraded to Class 1 offenses. (*Id.*). Plaintiff requested an investigation and informed hearing officer Long that he wished to have witnesses and explained that he wished to establish that the shakedown was targeted, retaliatory, and had no legitimate security interest. (*Id.*). Only Stanley was present at the hearing, and she testified that the shakedown was random and part of a training exercise. (*Id.*). Plaintiff could not prove Stanley was lying because his witnesses were not present. (*Id.*). Plaintiff alleges that Long was not impartial and that his due process rights were violated. (*Id.*). Plaintiff appealed on several grounds. (*Id.*). He alleges most grounds were ignored, and a sanction was imposed. (*Id.*).

Plaintiff alleges that retaliation continued when Kinsler began saying that Plaintiff was not performing his job duties, harassed Plaintiff over that, and resorted to propaganda against Plaintiff

which proved effective because on November 21, 2020, Plaintiff received another false disciplinary write-up that claimed Plaintiff had made threats toward C/O Richard Deputy ("Deputy").[1] (*Id*. at 20-21). Plaintiff requested an investigation and requested two witnesses. (*Id*. at 21). Captain Hickman ("Hickman") investigated the matter and concluded that Plaintiff obeyed Deputy's orders. (*Id*. at 21). Long was the hearing officer. (*Id*.). Plaintiff alleges that Long did not review video footage of the incident and that Deputy gave false testimony at the hearing. (*Id*.). Long found Plaintiff guilty of failure to obey an order and sanctioned Plaintiff to five days in solitary confinement and 40 days of loss of all privileges. (*Id*. at 22). Plaintiff appealed and alleges that Long ignored the appeal and incorporated sanctions without "producing" the appeal for consideration by DeMatteis per DOC policy. (*Id*.). Plaintiff's sanction began on December 11, 2020.[2] (*Id*.).

Plaintiff seeks injunctive relief and compensatory damages. (*Id*. at 6).

## II.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take

---

[1]    Deputy is not a named defendant.

[2]    The Complaint contains other allegations that are directed towards non-defendants. (*See id*. at 22-24). Those allegations are not discussed.

them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint

4

must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.   DISCUSSION

#### A.   Visitation

Plaintiff alleges that his friend Morris was banned from visiting the prison. To the extent this claim is raised against DeMatteis, the claim fails. It is long-established that there is no absolute constitutional right to visitation. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460,

(1989) (no substantive due process right to "unfettered visitation"); *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa.2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their families and spouses have no "constitutional right to visitation" other than with legal counsel); *see also White v. Keller,* 438 F. Supp. 110, 115-18 (D. Md. 1977) (neither prisoners nor prospective visitors have constitutional right to prison visitation), *aff'd*, 588 F.2d 913 (4th Cir. 1978). Moreover, the Constitution does not require that inmates be allowed visits when prison administrators determine, in their sound discretion, that such visits jeopardize the security of the institution or conflict with an orderly administration of the same for one reason or another. *See Block v. Rutherford*, 468 U.S. 576, 589 (1984).

As alleged, the visitation claim fails as a matter of law and, therefore, it will be dismissed.

**B.     Respondeat Superior**

It also appears that Plaintiff may have named DeMatteis as a defendant based upon her position as DOC Commissioner. There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which [s]he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 325, (1981) (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

As pled, the Complaint does not allege that DeMatteis violated Plaintiff's constitutional rights. Nor are there allegations that DeMatteis participated in or approved of any alleged constitutional wrongdoing or that she either actually knew, or had reason to believe, that Plaintiff

was being mistreated in any way by prison staff. *See Baraka*, 481 F.3d at 210; *Evancho*, 423 F.3d at 353; *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The Complaint fails to state a facially-plausible claim against DeMatteis. *See Twombly*, 550 U.S. at 570. DeMatteis will be dismissed as a defendant.

## C. Due Process

Plaintiff received two disciplinary reports, one for possession of contraband and one for failure to obey an order. Long held disciplinary hearings for both disciplinary reports. Plaintiff alleges that Long was not impartial, did not consider the evidence, and the witnesses lied. Plaintiff was found guilty on both infractions. While the Complaint does not indicate the sanction imposed on the contraband write-up, it states that Plaintiff was sanctioned to five days in hole and loss of all privileges for 40 days on the failure to obey an order write-up.

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, due process prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon. *Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). In addition, the disciplinary decision must be supported by at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

*Conner*, 515 U.S. 472, 484 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement and (2) the conditions of that confinement in relation to other prison conditions. *Id*. Because of the fact-specific nature of this test, cases engaging in this inquiry have reached differing outcomes. *Compare Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002) (denial of the right to participate in a sex offender treatment program that was "mandated and promised" by New Jersey law implicated a protected liberty interest), and *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," implicated a protected liberty interest), *with Smith v. Mensinger*, 293 F.3d at 645, 654 (seven months in disciplinary confinement did not implicate a liberty interest), *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest), and *Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d Cir. 1997) (administrative detention, which imposed strict restrictions on outside contact and personal conveniences, did not implicate a protected liberty interest).

Because the Complaint does not indicate the type of punishment Plaintiff received for possession of contraband, this Court cannot conduct an adequate *Sandin* analysis. Therefore, this due process claim will be dismissed with leave to amend. As to the due process claim on the failure to obey an order, the claim will be dismissed. Plaintiff received a sanction of five days in isolation and 40 days of loss of all privileges. The Third Circuit has made it clear that this type of confinement does not constitute an "atypical and significant hardship" so as to trigger due process rights. *See Fortune v. Hamberger*, 379 F. App'x 116, 123 (3d Cir. 2010) (citing *Griffin v. Vaughn*,

112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in segregation was not an atypical and significant hardship)).

### D. Retaliation

Plaintiff alleges that Stanley issued him a disciplinary write-up for possession of contraband following a retaliatory shakedown of Plaintiff's cell. In order to establish a retaliation claim Plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him. *See Watson v. Rozum*, 834 F.3d 417, 420 (3d Cir. 2016). The claim against Stanley fails as a matter of law. The Complaint does not allege nor describe any type of constitutionally protected conduct Plaintiff engaged in as is required to state a retaliation claim. Therefore, the claim against Stanley will be dismissed. Plaintiff will be given leave to amend the claim.

### E. Harassment

Plaintiff alleges that Kinsler harassed and resorted to propaganda against Plaintiff which resulted in the issuance of a disciplinary write-up by another correctional officer. Verbal abuse or harassment is not actionable under 42 U.S.C. § 1983. *See Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 119 (3d Cir. 2013); *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights).

Nor is Kinsler's alleged propaganda campaign cognizable under § 1983. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401 (3d Cir. 2000) ("federal courts are not to view defamatory acts as constitutional violations."). *See also Karolski v. City of Aliquippa*, 2016

WL 7404551, at *7 (W.D. Pa. Dec. 22, 2016) (noting that, "[b]ecause there is no federal constitutional right to reputation," "violations of state law, including defamation, are insufficient to state a claim under § 1983") (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992)). This Court will dismiss the claim against Kinsley as frivolous.

### F.     False Testimony

Finally, Plaintiff alleges that Stanley provided false testimony during the disciplinary hearing on the contraband write-up.  A witness, however, has immunity under § 1983 for false testimony.  *See Briscoe v. LaHue*, 460 U.S. 325, 330–46 (1983) (officer testifying in criminal trial enjoys absolute witness immunity for false testimony); *Kulwicki v. Dawson*, 969 F.2d at 1467 (witness testifying in judicial proceeding is absolutely immune for false testimony); *Williams v. Hepting*, 844 F.2d 138, 143 (3d Cir. 1988) (witness is entitled to absolute immunity from civil liability under § 1983 for perjured testimony at preliminary hearing and suppression hearing). Therefore, this Court will dismiss with prejudice the false testimony claim raised against to Stanley.

### IV.     **CONCLUSION**

For the above reasons, the Court will:  (1) dismiss the Complaint as frivolous and for failure to state a claim upon which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1); (2) dismiss all claims against Claire DeMatteis and Sgt. Kinsler; (3) give Plaintiff leave to amend the due process claim based upon the possession of contraband claim against Long and the retaliation claim against Stanley; and (4) dismiss all other claims with prejudice as amendment is futile.

An appropriate Order will be entered.